# FURMAN *v.* DEAN.

---

PATENTS; INTERFERENCE.

1. No advantage will be allowed a party to an interference whose application, filed after that of the other party, has been inadvertently allowed to go to patent; and, notwithstanding the issuance of the patent to him, he will be regarded as the junior applicant.

2. The fact that one of the parties to an interference had declared that his invention was different from that of the other party will not necessarily estop him from taking a contrary position in the interference proceeding, as there might be differences of detail between the two devices while they might be the same in substance.

3. Mere verbal differences between the original claims of one of the parties to an interference and the claims of the issue will not preclude an award of priority to him. (Distinguishing *Bechman* v. *Wood*, 15 App. D. C. 484; *Miehle* v. *Read*, 18 App. D. C. 128; and Following *Mc-Berty* v. *Cook*, 16 App. D. C. 133.)

4. Where, in an interference case, neither party shows actual reduction to practice, the senior party, being first to conceive, is entitled to an award of priority of invention.

5. An attempt by a party to an interference to show in his testimony, in rebuttal, disclosure of the invention at an earlier date than he had shown in his testimony in chief, tends to discredit the earlier disclosure claimed by him.

No. 268. Patent Appeals. Submitted November 15, 1904. Decided December 6. 1904.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          . *Affirmed.* .

The facts are sufficiently stated in the opinion.

*Mr. George W. Hey* and *Mr. A. E. Parsons* for the appellant.

There was no appearance for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference case. The matter in controversy is an invention of improvement in the construction of generators for heating purposes. It must suffice here to state the four counts in which the invention has been formulated, and which are these:

"1. A generator comprising upright sections arranged one in advance of the other, a number of the sections being each formed with substantially upright chambers at opposite sides of the com-

bustion chamber, connected at their upper ends, said chambers being provided with flues extending through their front and rear faces, and fire passages communicating laterally with the flues for conducting the products of combustion thereto.

"2. A generator comprising upright sections arranged one in advance of the other, a number of the sections being each formed with substantially upright chambers at opposite sides of the combustion chamber, connected at their upper ends, said chambers being provided with elongated upright flues extending through their front and rear faces at opposite sides of the combustion chambers, and having their front and rear faces formed with fire passages communicating laterally with the inner sides of the flues through the upper side of the combustion chamber for conducting the products of combustion to said flues.

"3. A generator comprising upright sections arranged one in advance of the other, a number of the sections being each formed with substantially upright chambers at opposite sides of the combustion chamber, connected at their upper ends, said chambers being provided with flues extending through their front and rear faces, and one of the sections being provided with flues extending through its front and rear faces and alined with the former flues fire passages communicating laterally with the inner sides of the flues, and a water-containing chamber arranged at the rear of the fire passages for forming the rear wall of the combustion chamber.

"4. A generator comprising upright sections arranged one in advance of the other, a number of the sections being each formed with substantially upright chambers at opposite ends of the combustion chamber, connected at their upper ends, said chambers being provided with flues extending through their front and rear faces, and fire passages communicating laterally with the flues for conducting the products of combustion thereto, and one of the sections being provided with flues extending through its front and rear faces and alined with the former flues, fire passages communicating laterally with the inner sides of the flues and a water-containing chamber arranged at the rear of the fire passages for forming the rear wall of the combustion chamber."

The invention is one for improvement of steam and hot-water boilers. Mark Dean, the appellee, was the senior applicant for a patent. He filed his application on December 30, 1897; and, when placed in interference with his rival, Frederick J. Furman, alleged in his preliminary statement, that he had conceived the invention on or about August 1, 1894; disclosed it about January 1, 1895; made drawings or sketches of it about May 1, 1896; made a working drawing about February 15, 1898; and reduced the invention to practice by the construction of a full-sized operative device about April 1, 1898, since which time about a hundred such machines had been constructed and put into practical use.

Furman, the appellant, in his preliminary statement, alleged conception of the invention about January 1, 1895; disclosure of it between January 1 and June 1, 1895; and reduction to practice about March 1, 1896, since which time a larger number of such boilers have been manufactured and put into general use. He filed his application for patent on February 25, 1898, nearly two months after the application of Dean; and, notwithstanding the pendency of this latter, it was inadvertently permitted to go to patent, which was issued on January 3, 1899, and thereafter assigned to the Herendeen Company, of New York. Under the circumstances no advantage has been allowed to Furman by reason of this patent, and he has been properly regarded as the junior applicant.

All the tribunals of the Patent Office concurred in awarding judgment of priority of invention to the senior applicant, Dean; and Furman has brought his cause to this court by appeal.

On the part of the appellant, an objection is taken which goes to the foundation of this whole proceeding, that the appellee Dean is not entitled to make the claims which are set forth in the issue of this interference,—first, because he had declared to parties in interest that his invention was different from the invention of the appellant; and secondly, because the claims in issue were not originally shown by him in his specifications. And, in support of this contention the cases of *Chicago & N. W. R. Co.* v. *Sayles,* 97 U. S. 554, 24 L. ed. 1053; *Bechman* v. *Wood,* 15

App. D. C. 484; *Miehle* v. *Read,* 18 App. D. C. 128, are cited. But the first of these grounds is merely matter of testimony, which does not necessarily raise an estoppel, inasmuch as there might well be differences of detail between the two devices, while they might be the same in substance; and this is what has actually been found to be the case by the Commissioner of Patents and the subordinate tribunals of his office.

As to the second ground of estoppel, this depends for its efficacy, not upon the absence of definite and special claim for the invention, but upon the failure of the specifications to disclose it. Upon such failure to disclose the invention it was that the cases of *Bechman* v. *Wood* and *Miehle* v. *Read* were based. But here it has been held by all the tribunals of the Patent Office — and we find no reason to question the correctness of their holding — that the original specifications of Dean do disclose the invention now in controversy. Indeed, the Commissioner holds that there is nothing more than mere verbal differences between his original claims and the claims of the present issue. The cases cited therefore do not apply here. Those cases refer to substantial differences between the original claims and specifications of an application and new and enlarged claims subsequently introduced for the first time after rights of third parties have intervened. Under the decision in the case of *McBerty* v. *Cook,* 16 App. D. C. 133, we find no reason to disturb the action of the tribunals of the Patent Office in this regard.

The only substantial question in this case is a single issue of fact,— Which of these parties was the first to conceive the invention? It is conceded by both that there was no actual reduction to practice by either before the filing of their respective applications in the Patent Office, whereby they obtained the benefit of a constructive reduction to practice. As Dean, the appellee, was the first to come into the Patent Office, he must be held to have been the first to reduce the invention to practice; and it only remains to inquire whether he was also the first to conceive and disclose the invention. For, if he was, all other questions are precluded.

Upon Furman, the junior party, was the burden of showing

the earlier conception.    In his testimony in chief the earliest date of disclosure which he could show was December 17, 1897. In his testimony in rebuttal he attempted to show by the same witnesses a disclosure in 1895.    This, of course, was wholly inadmissible, and would have tended to discredit the disclosure in 1897, if this latter had not been supported by some record testimony.    He was allowed by the Commissioner and by the other tribunals of the Patent Office the date of December 17, 1897, as that of his conception and disclosure of the invention; and we, too, are of opinion that the testimony does not warrant the allowance of any previous date.

The testimony on behalf of Dean we think is sufficient to show conception and disclosure of the invention by him in 1895.    But, even if all the testimony to that effect were disregarded, there is amply sufficient to show that he had disclosed it to his patent attorney and to the draftsman employed in the office of that attorney for the preparation of the drawings to be filed with his application on or before November 18, 1897, which was one month before the disclosure by Furman.

We find no reason, therefore, to come to any different conclusion from that reached by the Commissioner of Patents and the tribunals of his office; and accordingly we affirm the Commissioner's decision awarding judgment of priority of invention to Dean.

The clerk will certify this opinion and the proceedings of this court in the premises to the Commissioner of Patents according to law.                                      *Affirmed.*